Thank you, Your Honors. Good morning. Judge Reimer, I will try to pause every now and then because I know it's sometimes difficult to ask questions when you're on the telephone, so as I say, I will pause every now and then if you... If we let you. I'm sorry. If we let you. Yeah, that's true. Not to worry, I'm not shy. Okay. Yes, I think now. Your Honor, I would like to, with the Court's permission, reserve seven minutes of time. Whatever you have left on the clock will be yours. Okay, thank you, Your Honor. I'm Douglas Sletter from the United States Department of Justice, representing the government here on this appeal, and we urge that the order by the District Court be reversed and that the habeas petition by Mr. Trinidad be dismissed. I've got just a couple of key themes and points that I'm hoping to develop today. First is, it's essential to understand that extradition is a special area of practice, and that is something that, as you look at the statutes here and the Court's precedents, we think it's important to keep this in mind. What Trinidad is asking here is for this Court to overturn the determination by the Secretary of State that his extradition can be carried out legally because he is not likely to be tortured. Mr. Sletter, you indicate that extradition is a special area. What about military transfers, as in the Omar case? Is that different than extradition? Your Honor, we think that, as Judge Kavanaugh's recent opinion for the D.C. Circuit shows, there's very close overlap between the situations involving military transfers and extradition. Well, it's not immigration, but those are quite different, are they not? In the one case, you've got somebody who's been held by the military in Iraq, as I understand it, who is a U.S. citizen. Here we have a Philippine citizen, if I understand correctly, who is being held in the United States, whose hospital extradition has been considered by the Secretary of State. Those are very different formulas, are they not? Yes and no, Your Honor. For instance, the point about citizen, that doesn't matter. Extradition involves U.S. citizens, non-U.S. citizens, to most countries. There are some countries where our extradition treaty actually doesn't provide for that. But what I refer to is, remember that the Omar opinion builds very heavily on the D.C. Circuit's prior opinion in Kiemba. Now, Kiemba is an alien in Guantanamo to be transferred to a foreign country. And so that is very similar to this situation. But we believe, as you're aware from our briefing, we think the Munaf opinion here, which is the earlier version of Omar, Omar was one of the petitioners in Munaf, is very important because the principles of law announced and applied there by the Supreme Court give very helpful direction to this court as it determines what its proper function is in this type of area. If I understand Munaf correctly, the Supreme Court is telling us that we have jurisdiction, but that in the exercise of that jurisdiction, we should invoke the rule of non-inquiry. And as long as we've satisfied ourselves that the Secretary considered Mr. Trinidad's claim that he was likely to be tortured and rejected that claim by agreeing to return him to the Republic of the Philippines, that at this point on the merits, we should simply dismiss his claim and not order the Secretary to produce the administrative record and review on the merits the evidence that the Secretary considered. Is that how you read Munaf? Yes, Your Honor. And now Munaf, remember, said right up front, they said there is jurisdiction because it was involving a U.S. citizen. It rejected the government's argument based on HIROTA. But we've never based habeas jurisdiction on citizenship. Correct. Right. And so here, I'm agreeing completely with everything Your Honor said. I just want to point out there the jurisdictional hook is not the same as here. But what you said, Judge Tallman, is exactly right. Again, the principles that the Supreme Court used, and by the way, if I could further answer Judge Smith's question on that, notice that in Munaf, one of the things that the Supreme Court cites is a leading treatise on extradition by Professor Bassiuni. So the court wasn't just treating the Munaf case as if it had nothing to do, it wasn't in any way like extradition. Your Honor, I find it difficult to figure out here whether there actually is jurisdiction or not, because, as we know, the FAR Act says that it is not granting jurisdiction over it. Why does the FAR Act apply and not the REAL ID Act? The REAL ID Act was enacted before the events in question in this case by a couple of years. So shouldn't that be the statutory focus of our inquiry? Your Honor, yes, we believe that the REAL ID Act is actually governing here. The REAL ID Act is enacted with the FAR Act in existence, and I want to address both issues because my friend, Mr. Harbaugh, is heavily relying on the FAR Act. My question isn't that. I really am not even working to this, because I thought the answer to Judge Feldman's question quite directly is to say that you are taking the same position as in Munaf, that is, that there was jurisdiction, but that it should not be exercised as long as there is some assurance that the State Department considered it, and now you're saying, otherwise, I think. I'm not saying otherwise, Your Honor. What I'm saying is I find the Supreme Court has wrestled with what does jurisdiction mean, what doesn't it mean, and unfortunately, I'm struggling with what the Supreme Court is telling us. Well, what is the position of the Secretary of State? Do we have jurisdiction or do we not? What I'm saying is like in Munaf. Is that a yes or no answer? I mean, you know, there are many times where we have jurisdiction, but we can't grant relief. That's exactly right. What I want to say is that Munaf makes clear that the issue here is not justiciable. I don't know if... Well, I don't think it's important here for the result. It is clearly not justiciable. As the Supreme Court said, the writ there... Except we're not allowed to assume that we have jurisdiction. So it seems to me that we have to decide whether the real idea strips us of jurisdiction or doesn't before we move to the next piece, regardless of who wins the litigation. Right, and again, Your Honor, my problem is, as you know, we're heavily relying on the rule of non-inquiry. It is not clear to me if this Court, which has applied the rule of non-inquiry in a number of cases and its sister circuits, and the way the Supreme Court applied it in Munaf, whether you view that as, since it's a justiciability issue, does it also then mean you do not have jurisdiction? Well, wait, wait. Can I get back to Judge Graber's question? Because I have the same one. If the Real ID Act applies outside of the context of aliens who are subject to a removal order, then the plain language seems to say there is no habeas jurisdiction for this sort of claim. So what is your position on the Real ID Act? Is it limited, or does St. Cyr limit it? No, Your Honor, it is not limited. St. Cyr is not limited, and I'm happy to go into both of those issues. Remember, again, my hesitation is the Real ID Act doesn't speak of jurisdiction. The FAR Act does, and says that the Torture Convention, the FAR Act does not provide jurisdiction. As we know, 2241 is a jurisdictional provision, so in the one sense, maybe there's jurisdiction. But again, this is not justiciable, and therefore, in my view, that means there is no jurisdiction. The Real ID Act says that a petition for review filed with the Court of Appeals shall be the sole and exclusive means for judicial review of any cause or claim under CAC. And are you saying that would not deprive us of jurisdiction if it applied outside the immigration context? Your Honor, again, I'm struggling. I don't know precisely what the word jurisdiction means. As you said, it says it's the sole means of review. If the rule of non-inquiry, if this Court thinks that's a jurisdictional principle, which is, we have no problem with that, then there's no jurisdiction. It seems plain to me, more or less, that it is a statement of non-injurious and judiciary and self-restraint and so on. And the same problem is as far as we could have it applied here, where you have a applicable statutory enactment of the norm. So it's not at all going to be applied here. Your Honor, I'm going to say there is no jurisdiction. This Court has applied the rule of non-inquiry as a justiciability principle, as the Supreme Court seems to have, even though the Supreme Court said there's jurisdiction in Munaf because it's a citizen. But I hope, Mr. Lutter, you understand that a lot of us have a question that jurisdiction and justiciability are two different issues here, at least from my perspective. And I thought the government conceded at page 18 in its reply brief that there was jurisdiction here, but you're, of course, arguing that the rule of non-inquiry should govern our disposition of the case. Is that correct? Again, Your Honor, Section 2241 is a jurisdictional provision and provides jurisdiction. Again, for example, the political question doctrine. It has been variously described by, I believe, the Supreme Court and various courts as a rule of justiciability, and sometimes the courts describe it as there is therefore no jurisdiction. I don't know which of those is right. Is your argument that it's the rule of inquiry that is dispositive here and not either of the statutes? No, Your Honor, no, not at all. It's all, by no means, it's all of them together, and one of them would be sufficient. The Real ID Act makes clear whether you call it, it says it's the only means of addressing a torture convention claim. If you want to call that jurisdiction, we're fine with that. If you want to call it justiciability and say that that means something other than jurisdiction, we're fine with that, too. Maybe there's another way at this same question with which we're struggling. And do you want to argue, or is it implicit in your argument, that our decision in Nadaraja is wrong? Is it your position that the four Court of Appeals decisions in St. Fort, Wang v. Ashcroft, I can't pronounce it, Ogdeninka, and Cadet are wrong? None of those is an extradition case, but all of them say that there is habeas jurisdiction outside the Real ID Act and outside the FAR Act. Your Honor, I'm not addressing those cases at all today because... Okay, because I think if they're right, habeas lies, and the only question is whether habeas lies in an extradition inquiry with respect to torture. And the reason I'm saying I'm not addressing whether those decisions are right or wrong is not a single one of those decisions address the actual statutory provision at issue here, the part of the Real ID Act that governs the Convention Against Torture. No, Nadaraja addresses it directly. I don't believe so, Your Honor. Nadaraja addresses Section 1254b-9. And we pointed that out in our rehearing petition. It addresses a different part of the Real ID Act. This Court has not addressed 1252a-4, the provision we are relying on here, and has never said that that provision does not cover an extradition case like this. This Court has not addressed that. And the earlier Corneo decision obviously didn't address it because the Real ID Act comes after that. So, Nadaraja and those other decisions you mentioned are, and again, this is exactly what we explained in our rehearing petition and our opening brief, are distinguishable because they address a different subsection of the Act with very different language. I actually have a question about 1254b-9. Yes, Your Honor. Again, because you're facing two different issues. One is that you seem to be suggesting to me that if we knew that there was going to be torture, that there might be a different result. Is that where we have problems? If I may, I'd like to say that somewhat differently. What the Supreme Court said in Munoz, it would be a different case, it might be a different case, I'm sorry, the majority said it might be a different case, if it was a situation where the government believed that the person would be tortured but was going to transfer him anyway. Let's assume that, I had a hard time reconciling that position with your structural position in the sense that if, for example, A4 does post all claims and it posts all claims, and the judge is just going to make whether you do or do not make a choice here or did, then similarly as I understand the rule of non-inferring, it is completely agnostic as to that question. Your Honor, the explanation is, remember, the Supreme Court didn't answer the question in Munoz, it simply reserved it, and this Court need not answer the question, it can reserve it, because the issue there is, would there be some sort of substantive due process right if the Secretary said, I know you're going to be tortured, but it's really important to me to have good relations with us in such a country, and so I'm going to extradite you anyway. What we have said is, that will not happen. The Secretary of State, that has never happened, and it will not happen. But if it did, that might be a different question, and that's exactly what the Justice, actually all nine of them, reserved that issue, the three concurring Justices especially addressed it. But this case is like Munoz, which in fact this case is stronger than Munoz. Because in Munoz, you note from a careful reading of the opinion, the Supreme Court there noted that the government had a policy, and that's what we made very clear to the Supreme Court. We had a policy that we would not transfer somebody if we were transferring him to torture. Here, what we've said is, the Secretary of State has examined the situation in making her surrender warrant determination, which here was made personally by the Secretary of State. What about challenges to the Secretary's process? Just to give you a hypothetical example, not applicable in this case, but that's what we do, right? Exactly. Let's say the Secretary says I've determined there will not be torture, and the Petitioner says it was a kangaroo determination. The Secretary did nothing, somebody put a piece of paper in front of her and she signed the document. There really was no inquiry. Is that kind of review barred? Your Honor, we think it is barred. However, if the court felt that all that is appropriate for you to do is that sort of limited inquiry to see has the Secretary addressed the specific question, for example, in the future, one of the things we could do is have a separate line where the Secretary says, I've made the determination that torture is not likely, and therefore a surrender warrant should be issued. Your Honor, if I understand the implication of your answer, you sort of backed into the position that we have jurisdiction, but our inquiry is limited. Your Honor, I... That we have habeas jurisdiction, perhaps limited to very, but our inquiry is limited, the kind of relief we're getting is limited. Your Honor, our position is, frontline position is no, not necessary in this case. But it is sort of necessary because it eliminates the jurisdiction, the question you were struggling with as to whether we have jurisdiction or not. If we had jurisdiction to make that kind of inquiry, which again is not raised in this case, but in the hypothetical case if we could, that tells us, you know, you can't even look, right, if you have no jurisdiction, all you can do is toss it out. So the very fact that we could look at something like that suggests that we do have jurisdiction. I'm not sure if it's positive or negative in this case, I don't think it's crucial to your position, but it doesn't eliminate the question, the answer to the question of whether or not we have jurisdiction. Your Honor has made a very fair point, and again, as you said, it's difficult to tell whether it makes a difference in the bottom line one way or the other. But if the court felt that for... Let me ask you a closely related question. Let's say the secretary said I've had an inquiry and certified that she had an inquiry and then said, you know, and I have determined that he will be tortured, the petitioner will be tortured, but it's really important to keep good relations with country X, so we're going to send him back anyway. Is that reviewable, do you think? Your Honor, like the Supreme Court in Munoz, we don't think the court needs to address that issue now, and therefore we're not addressing it, that the court, this court has said in the rule of non-inquiry, might, and this court has emphasized, as have your sister circuits. So how do we know that this situation doesn't exist here, the one Judge Kaczynski described? Well, there's absolutely no evidence that the secretary has engaged in any kind of bad faith at all. The ultimate problem here is that the rule of non-inquiry, if it applies, means that the court, we have a black box. Yes. And the court has no knowledge about anything and won't. Right. And the real question, ultimately, is what happens then? Do there be rules? And we definitely win, that's what the Supreme Court said in Munoz. Remember, Munoz is, not only this case, it's even maybe a little more difficult for the government, because there, as you see, the government never said, the executive branch has looked specifically, and Mr. Omar and Mr. Munoz are not likely to be tortured. Two points on that, Your Honor. What we said is, you're right on the first point, and it's something that my friend Mr. Harbaugh has emphasized. If a torture convention claim had been made in Munoz, obviously Munoz would be directly governing here, and we wouldn't be here, we would have won in the district court. The key, though, to Munoz is, as we said, the Supreme Court's rationale and its opinion is absolutely clear. There's no doubt about what the court was saying and why. We've quoted it extensively in our brief, it's quoted extensively by the D.C. Circuit. So, the rationale of Munoz is that when the government comes forward and says, we have a policy, we apply that policy, the court says, we're concerned about torture, but the Supreme Court accepted, it makes very clear, it accepted these statements by the Solicitor General, and therefore it ordered the writ dismissed. You know, you were pushed by my colleagues a little bit into the next compartment, which is fine, that's how things go, but I'm still thinking about my question, and my question is not a black box question, because what I've hypothesized is a situation where the secretary tells us what's in the box. She says, I've looked in there, there's evidence, I've concluded he will be tortured, I'm going to send him back anyway. So, I take it, whether we can review it or not, you would agree that that would be a violation of the convention? That would be a violation of the convention, yes, Your Honor. So, we would have an admitted violation of the convention, and the secretary, for reasons, I'm sure, good reasons of foreign policy, decides to send him back anyway. In that situation, where we don't have to look in the black box, where we don't have to second-guess the review process at all, where there's an acknowledged violation of the convention, would we have jurisdiction to review and authority to, what would be called, reverse? Actually, it would be grand relief. And, Your Honor, a couple of points in answering your question, which clearly, you know, you've hit the nail on the head here. Part of it, first, is, remember, you said, would that be a violation of the convention? I answered definitively, yes. Now, remember, the convention is not self-executing. So, simply saying that something is a violation of the convention does not, in itself, mean that an order is appropriate from the court. This court and the Supreme Court and various sister circuits have all made clear those are two very different things. But then, you've asked the question, would this court, then, would a writ be appropriate? A district court, actually. A district court, I'm sorry. Yes. Would a writ be appropriate under some sort of substantive due process theory, is, I think, how you would have to put it? It wouldn't be a violation. A violation of the torture convention wouldn't support. Because there's no private right of action? Right, Your Honor. It's not just, it's not judicially enforceable in an individual action. As a non-self-executing treaty, we know that. But the Supreme Court put it, and Munoz put it in terms of, would it be a substantive due process violation that maybe would override? I see. This is where the extradition would be, I think, the term the court has used is antipathetic to the sense of justice. This court has said, that may be an exception. We're not answering it. And here, too, we're saying, we don't need to answer that question, but I want to, I think it's very important. But if we decided to answer it anyway, what would be your help you could give us in answering the hypothetical question? What is the position of the United States if we, for reasons that are probably unfathomable to you, if we decided to answer it? The, going slightly back, if I may, Your Honor, to the first thing you asked. If, you know, would the government be willing to say, to reveal to the court, the Secretary has made the determination, as I said, as a fallback, yes, we would. In our view, once the Secretary has made that determination, and the court is aware of it, that would be the end of it. But I'd like to emphasize over again, we know the Supreme Court has reserved. I'm sorry, reserved would be the end of it in the sense that we could grant relief. No, I'm sorry, the opposite. If the Secretary has done her function, the Secretary has said, I have made my determination that torture is not likely here, our argument would be that is the end of it. I understand that, but I was hypothesizing where she says torture is likely, but I'm going to send him back anyway. That's the end of the line. That's the end of the line. And that's the most difficult issue since it's not present here. It has never been present. There is no case. But isn't there information in this file that a person associated with this particular gentleman underwent torture? And I mean, there's a big paragraph on that. Yes, Your Honor. So how do we know? And I'm assuming that information was before the State Department. Yes. So how are we going to feel comfortable just being told that, yes, someone who worked with this person and some of these activities was tortured, but there's nothing we can do about it. We just have to accept what the Secretary says. So I mean, that's what it all comes down to. You're right, Your Honor. Yeah. So what good are the courts? And there are several answers to that, Your Honor, because, yes, you have gotten to the center of it. I mean, is it that the Secretary doesn't trust the judges to look at information and camera and keep it confidential? There haven't been, as far as I know, any leaks from courts. There have been a lot of leaks from the State Department and from the Defense Department and other places. But we can't be trusted to look at it? Your Honor, I'm going to take that point just as a side point, and then I want to get back to the real heart of your question. Unfortunately, for example, in other cases, as I've argued to this court before in Vang, sadly, in national security cases, there have been leaks by judges. I'm sure all inadvertent, but there have been. But let's just put that aside. I've been around for a long time. I read the New York Times every day and a couple other newspapers. I'm not aware of that. Well, Your Honor, there's a very good reason for that. When a court inadvertently discloses classified information, it's generally not in our interest to make a big public deal of that. It's much more likely we would like to hope that nobody notices. Just extradite the judge. If the judge has committed a crime in a foreign country. But let me get to the true heart of your question. I have an A number, just so you know. Okay. I'm here all day. Happy. I'm enjoying this. Your Honor, several points. When you say, is there evidence that Mr. Harbois has put in of evidence of torture of others? Yes. And as you know, quite clearly, we have not responded to that. Now, remember, the question is whether the torture is more likely than not. And that can depend very heavily on assurances from the foreign government. As Mr. Johnson's declaration in the excerpts of record shows, assurances can be an extremely important part of the whole extradition bilateral relationship. As we've made clear, we don't think this is reviewable, and so we're not going into any discussion of what is actually in the record. But assurances can be, then, a very key aspect of, yes, there has been torture in the past. Or we have significant questions about this country's human rights record. But we have obtained assurances. Second, remember that with the rule of non-inquiry that this Court has embraced, you yourselves have made clear that there are subjects that are not appropriate for the judiciary. And the rule of non-inquiry has been applied, for example, in cases, Ahmad v. Wiggin, the Second Circuit case, where the plaintiff was saying, the petitioner was saying, if you extradite me to Israel, I will be badly mistreated there. And that is really the difference that you haven't dealt with very much. I'll deal with it right now, Your Honor. Remember, the standard, as I said with Chief Judge Kaczynski, the standard is in a treaty, the Torture Convention, and the FAR Act, since it's the policy of the United States, it is non-self-executing. It is not enforceable. But all that the statute does is take the treaty and say, this is the law. But it's not, if anything, Congress did exactly, Congress made absolutely clear the opposite. Right? Congress said that when it passed the FAR Act, Congress provided for certain judicial review in the immigration context only. Why would Congress do that if it was self-executing? It wouldn't have needed to do it. But Congress did, but only in the limited area of immigration. Is the Secretary's surrender warrant a final order of removal under 242? Or, for that matter, under 1256? No, Your Honor. An extradition surrender warrant is not a final order of removal. Final order of removal is in the immigration removal context. So, I gather that notwithstanding your concession in the reply brief that we have jurisdiction, as far as the government is concerned, we have certainly no jurisdiction pursuant to 2242, and we have no jurisdiction pursuant to the Real ID either because this is not a final order of removal in an immigration context. Is that your point? That's exactly right, Your Honor. Thank you. And even more, the Real ID Act is, remember, that the courts cannot consider torture convention claims notwithstanding any other law in any other context. Thank you, Mr. Lerner. You're over your time. Thank you. We'll hear from Petitioner. No response, Your Honor. Yeah, no, Petitioner. May it please the Court. My name is Craig Harbaugh and I represent Mr. Trinidad. Mr. Trinidad enjoys a constitutional right to habeas review of his unlawful extradition. He had that when he challenged the determination the first time around of the proceedings before the district court. That's what the extradition statute contemplates, does it not? No, Judge Talman. The extradition statute interposes a magistrate to make the... It sets the procedure, but if you want to challenge the determination by the magistrate in ordering extradition, you bring a 2241 action, correct? Yes, Your Honor. And he did that. And at this point, he's not challenging the probable cause determination, is he? That is true, Your Honor. So why hasn't he been afforded all of his habeas rights that he's entitled to on extradition? Judge Talman, Mr. Trinidad is entitled to challenge not only the secretary's authority under an extradition statute, but whether the secretary's act of surrendering someone violates statutory or constitutional rights. So now you're back to the conundrum of the CATS Convention, and if it's not self-executing, and if the FAR Act does nothing more than implement policy through legislation, and if the regulations promulgated under the FAR Act make clear that there is no substantive right that is being created here that is judicially enforceable by an individual, what is there left to do on habeas the second time around? Your Honor, whether or not CAT is self-executing... Well, we know it's not. The Senate told us that when they ratified the treaty, did they not? Your Honor, they provided a declaration. Assuming counsel, isn't that how it works? The Senate of the United States can apply conditions when it binds the United States to a treaty obligation. And one of the things that the Senate can do is say, this treaty is not self-executing, and that happened, didn't it? There was a declaration, yes, Your Honor. Regardless of whether it's self-executing, and for purposes of my answer, we'll assume here that it's not. The FAR Act has independent force of law. It's positive law in the United States, and the Secretary, as the government has conceded throughout, is prohibited by law from surrendering someone where there's a likelihood of torture. Isn't there a difference between policy and right? In other words, Congress is perfectly entitled to pass any piece of legislation it wants. It can pass a piece of legislation that's a resolution, but that doesn't necessarily create an enforceable right. So if we take the Senate at its word, and the FAR Act created, in essence, a basis to authorize the Department of State to promulgate regulations implementing policy, why is that inconsistent with the conclusion that no judicially enforceable individual right was created? Your Honor, we interpret the statute differently. As this Court did in Singh v. Ashcroft, and as the government has conceded, that FAR Act... Well, Singh v. Ashcroft is an immigration case, and we have another piece of legislation from Congress that carves out an exception, do we not? And that exception is, if an individual wants to bring a CAT claim, there's one place that it can be done, in an immigration removal hearing, and in no other place. The statute is very clear on that, isn't it? Your Honor, to clarify, you're referring to the REAL ID Act? I am referring to the REAL ID Act. Although the FAR Act says something very similar. Judge Graber, if I could address the FAR Act after I answer Judge Palmer's question. Yes, of course. Your Honor, the REAL ID Act does not deprive the Court of jurisdiction to review a FAR Act claim in extradition matters. In interpreting a provision of a statute, the Court must look to the statutory context, as well as the purpose of the statute. As this Court has repeatedly interpreted the REAL ID Act, its entire focus is judicial review of removal orders. Along with that interpretation, the CAT provision simply channels judicial review through the Courts of Appeal, and denies habeas, but it provides an adequate substitute. Your Honor, even if that provision could be interpreted as ambiguous, as being divorced from the statute and applying outside the immigration context, then it's rendered ambiguous because it's susceptible to two meetings. What's ambiguous if you adopt my interpretation of the REAL ID Act, which is there is one area of law where a CAT claim can be raised by an individual, and that's in an immigration removal hearing? Your Honor, with due respect, I don't adopt your view of the REAL ID Act. Well, I'm not asking you to agree with me. I'm just asking why can't Congress create an exception that is limited to immigration proceedings, where it deals with aliens, as opposed to carving out a broader exception in extradition proceedings, which is a completely different animal, dealing with the return of a fugitive to a country that is requesting his extradition because of the fact that he's accused of a crime committed there. That's a very different animal than deporting an illegal alien. You can read the REAL ID Act, and also the Convention Against Torture, is our country adopting a policy of not sending people away to foreign countries where there's a chance that there'll be torture. And isn't that part of our human rights policy? We don't send people to other countries if there's going to be torture. They're going to be abused. They're going to be raped, and all that. So, and everyone who's in this country is entitled to the protection of the Constitution, whether they're an alien or a citizen. Do you contend that the Secretary's extradition warrant is a final order of removal for purposes of either FAR or 1254? No, Your Honor. Okay, so doesn't that really get back to the point that Judge Tallman made, that those statutes really only deal... I'm sorry, Your Honor. Well, there are several on the table. There are a lot of them on the table. Well, no, I'm putting my arm in the question. Judge Smith, if I could get back with you right away. That's fine. And Judge Fregerson, that's exactly... We're good friends. He'll agree to this. Judge Fregerson, that's exactly correct, and that ties into Judge Tallman's question. When individual liberties are at stake, where Congress has imposed a statutory obligation on the executive, the judiciary must have a role in the process. What does he say must? Where does a must come from? The suspension clause of the Constitution, Your Honor. As interpreted by St. Cyr... Suspension of habeas corpus. Does that just get you back to the question of whether or not there is a right to habeas corpus, traditionally, for this kind of claim violation? That's correct, Your Honor. In what case can you cite for the proposition that a United States court grants has authority to view this kind of determination? Hasn't it traditionally been we've had a rule of non-inquiry that said if somebody's being sent to a different country under an extradition warrant, we do not, in the judiciary, inquire into what happens to that person once they get to that country. That's in the executive branch. That's been the rule since the dawn of the Republic. That's the rule of lack of conscience in the judiciary. Your Honor... You need to cite a case. If you're going to say there is a right, there is a right, which is what you're saying, you need to cite case law that says there is such a right. And where does it come from? Give me a case. Your Honor, this Court's decision in Prasoprat v. B'Nav, in Cornejo I, in Flaxland, in all of those cases, the Court acknowledged that despite the rule of non-inquiry... You need to find something a lot older than that if you want to say there's an additional right. You've got to look at something in the first 200 years of the Republic. Isn't that something that a lot of prisoners are looking at this question for? I don't think it's an executive distinction against federal law, it's how you characterize it. You come at it one way, you look at it as an advocacy, rule of non-inquiry in the absence of a federal principle, you look at it another way. Your Honor, we approach our argument from the perspective that Congress and the Constitution has prohibited the executive from surrendering someone where they're likely to face torture. With those rights... I'm sorry, where does, you say you approach it from that perspective, but where does that right come from? The Substantive Due Process Clause, Your Honor, for the substantive right of this case. But in fact, you have had a rule of non-inquiry. As soon as you deem that what you're arguing is a rule of non-inquiry, I assume you're going to make the absence of a federal norm. Now we have a federal norm, we have a Convention Against Torture, so that's not the way to look at it anymore. The way to look at it is that there's traditionally been a right to have taken forms against executive detention in violation of federal law. And if you look at it the other way, it seems to me that you're out here putting torture at the center of it. And the history goes the other way. So it's sort of a question of which way to look at it. Correct, Judge Berzon. The rule of non-inquiry is a rule of judicial restraint that the courts have imposed on themselves. And there they applied it in the absence of a statutory or constitutional right at stake. Here we have a statutory obligation imposed on the executive, and therefore the court can grant relief where the executive violates it. And through your line of analysis... Your Honor, we believe it's not relevant at all. Because when the plain meaning interpreted within the context of the Real ID Act in Section 1252, where it's placed, it only channels judicial review of a tax claim raised in the context of a removal order. No, Your Honor. And I'd like... The fact that Congress didn't reference the removal order in that specific A4 provision does not indicate that Congress intended for that provision to apply beyond the context. And the Supreme Court's recent decision in Cullen v. Pindlester is instructive there. There, the court was interpreting AEDPA and interpreting two different provisions, and D1 did not contain language, a particular clause, that was present in D2. And the Supreme Court concluded that, based upon the entire statute, that it was presumed in that. But, Your Honor, even... Well, that ends in two problems. One is the one you're referring to. That is, the statutes are not really parallel, B4 and B5, because B5 directly deals with the provisions of the prerogative of the removal orders, and B4 helps with that. Any clause of the claim. But the other problem is that B5 covers everything that you're saying before us. Yes, Your Honor. Also, B9 potentially covers all of those claims as well. There's... As the court has indicated, the Real ID Act and much of the provisions to 1252, or the amendments, is a patchwork of legislation. But, Your Honor, at most, it renders the provision ambiguous. And the legislative history in this case makes clear that Congress had no intention to deprive petitioners of habeas beyond those challenging removal orders. Counsel, can I return to the FAR Act, which we briefly mentioned a while back? The first ground for relief stated in your habeas petition is that there's a violation of the Convention Against Torture. And the FAR Act appears to strip any court of jurisdiction to consider or review claims raised under the Convention, except for the final order of removal, which you have agreed this is not. So, why... What is unclear about that? Why is there jurisdiction in any form under that statute for your first claim for relief? And your second claim had to do with probable cause, and that's no longer in the case. Judge Graber, as this court held in St. Viascroft, the issue is not whether Congress conferred habeas jurisdiction, but whether Congress revoked it. And under St. Cyr, Congress did not provide a clear and unambiguous... Well, there may be jurisdiction... I mean, I guess this brings us back to what the government is saying. There may be, in some abstract sense, habeas jurisdiction, but no jurisdiction to review a claim of this type. So, in other words, you had a habeas proceeding that looked at the grounds for probable cause and the other things that are available as claims in that context. Maybe the better way to say it is, why is this claim available to you without using the term jurisdiction? Your Honor, to clarify, are you referring to the rule of non-inquiry? No, I'm referring to the fact that when Congress has implemented the convention, it says there's only one way that an individual can raise a cap claim, and that's as part of a final order of removal. But otherwise, no court has jurisdiction to, or authority, let's leave out the word jurisdiction, to consider or review claims under the convention. So, in other words, I read that to say, in your petition, Claim A, which says convention against torture, is one that Congress has said we're not supposed to review that claim. They have not granted us authority to review that claim when they enacted this statute. Claim B, you could adjudicate and did. So, what's wrong with that analysis? Your Honor, the analysis is wrong because the statute, once it establishes an obligation on the executive, the default is that habeas jurisdiction exists, and Congress must be explicit by providing a clear and unambiguous statement revoking habeas jurisdiction before it is unavailable. And the statute, as interpreted by this Court in Singh v. Ashcroft, does not provide that clear statement. My question is definitely behind the review or review of what I'm looking for. At some point, it seems that your concern is that the due process that you are able to directly interact with the State Department. Is that right? Refer to this question. Your Honor, there were three separate claims raised, and this ties into what Judge Kuczynski asked earlier. We raised a claim under the FAR Act, a substantive due process claim, and a procedural due process claim. Okay. So, one more precise question. Are you looking for a further purpose? Supposedly, that jurisdiction would become narrowing perhaps to do something. Why do you think you're asking us to do it? Are you asking us to tell the State Department to do some further process? What kind of process? Your Honor, this Court set forth the standard of review of a habeas. I'm not asking you that. I'm asking you what relief you're looking for.    is going to have to do something about it. The relief that we're asking for is what the district court granted. Here, the Secretary of State refused, rejected the district court's order and refused to produce the administrative record. And under any standard, arbitrary capricious are a substantive violation of the FAR Act or a violation of substantive due process, it's clear Mr. Trinidad is entitled to relief. So, there's no need for further proceedings. Now, I understand that. Suppose that what you want was a due process where, okay, why would we need the administrative record? Okay, so why would you want it? What do you have to do? We believe the standard would be whether there's substantive evidence to support the Secretary's factual findings and a de novo standard on legal determinations but with due deference to the executive. And if you're thinking about a variety of possibilities here, you're really not helping us in terms of what exactly it is that you're asking for or what exactly we ought to be doing. I apologize, Your Honor. So, Judge Rizan is asking something that had occurred to me as well. And I'm just wondering as a factual matter, just a couple of quick questions. Trinidad has been in jail since 2007. He's been detained because of this order of extradition. Your Honor, actually, Mr. Trinidad was in jail since October 2004, and he remained in jail until habeas relief was granted. Then the court imposed substantial restrictions on his movement, including home detention and ankle monitoring. Okay, so he is – so are you complaining that – well, he certainly has notice of what is that issue. Are you complaining that he didn't have an opportunity to be heard by the State Department? For the procedural due process claim, yes, Your Honor, and at a minimum an opportunity to rebut any evidence introduced. And as the Third Circuit held in Kuzon, that even diplomatic assurances a petitioner is entitled to see the evidence against them and an opportunity for review before a neutral arbiter. Why doesn't that fly directly in the face of the language in Munoz, that the judiciary is poorly suited to determine foreign relations between countries and to second-guess the executive's determinations, that the representations that the Secretary may or may not have received from the Philippines are adequate to ensure that Mr. Trinidad will not be tortured upon his return? Judge Tolman, that language is tied to the circumstance presented in that case. There, the petitioners did not allege grounds for relief because they asserted the possibility of mistreatment in a prison facility. That was rebutted by the State Department's reports concluding that the Iraqi Ministry of Justice met international norms. They said the same thing to us in extradition cases, have they not? That there are concerns that the government needs to speak with one voice, and that is through the executive branch. And that if courts start intruding by examining the quality, for example, of the court system in the requesting country, that that's not our job. And yet, that's exactly what you're asking us to do. Your Honor, that was in the context of a discretionary ground. The petitioners did not allege a valid violation of federal or constitutional law. But if this was a procedural reprocessing, you would not be asking for us to deny them that. You'd be asking for us to see if the State Department, in fact, either sees what a plaintiff is doing, that's one possibility, or is interacting with you in some way, that's another possibility. And in either case, the court system is going to get itself suspended. Would that satisfy your claim, or would it be a lesser possibility Your Honor, that would not satisfy our claim. Even if the court held that the Secretary violated procedural due process, Mr. Trinidad would still be entitled to judicial review of the substance of that determination, where he alleges a valid violation of a statute for the Constitution. And that was not properly alleged in MUNA. And that's why the Supreme Court refused to grant relief. And it, Your Honor, the fact that I'm sorry, what statute and what constitutional provision are you talking about? The FAR Act and substance due process, Your Honor. As the concurrence explained in MUNA, that if the Secretary, or excuse me, if the Executive had either, as you discussed, concluded that the person would be tortured, or had turned a blind eye to a well-documented case of torture, then it would be for the courts to decide whether substance due process prohibits the Executive from surrendering people to face torture. And those circumstances weren't present there. In addition to the evidence Mr. Trinidad presented of specific acts of torture, Mr. Trinidad relies on the Secretary of State's own agency's reports, which confirm that torture is an ingrained part of the Philippine criminal justice system. And so, Your Honor, there's an argument that the Executive, at least through the Secretary, concluded that a person in Mr. Trinidad's situation is likely to be tortured, but chose to surrender him anyway. But you basically... I believe that's not so. They told us it's not true. They looked at it and decided it's not true. Under those circumstances, why did you want us to do this? Why do we have authority to do this? Given that our situation is structurally different. Your Honor, the Court still has the authority to look at a violation of the FAR Act. And where a petitioner presents compelling, unrebutted evidence of the likelihood of torture, this Court not only has jurisdiction to step in, it must step in. The Executive cannot shield unlawful action by keeping Mr. Trinidad out of court. So you basically want us to look at the record, see what representations were made to the Secretary, challenge those representations, and then conclude that whatever assurances were given to the Secretary of State are not adequate to protect Mr. Trinidad, and therefore we should order the Secretary not to honor the request from the government of the Philippines. No, Your Honor. We're seeking a much more limited review. And, Your Honor, this presumes... And then you want to introduce evidence in response to whatever is in that file. Aren't you going to get us right into the position of second-guessing the representations that the Secretary of State may have received from the government of the Philippines that caused her to decide that Mr. Trinidad could be safely returned? Your Honor, the Supreme Court in Munoz did not conclude under no circumstances can a federal court review a torture determination. So your answer to my question is yes, that's what you're asking us to do in this case. This is the case that the Supreme Court left open in Munoz. Isn't that your answer? Yes, Your Honor. How do we know that? Your Honor, we don't because the government refused to turn over any information in this case. We don't even know if there are diplomatic assurances. But why should we assume that the Secretary of State, as a constitutional officer of the government, will not abide by the obligations under the FAR Act and under the Convention Against Torture in the face of a claim by Mr. Trinidad that he can't be safely returned? Your Honor, we're not asking the court to presume that the executive has violated the law. But in the circumstances of this case, where there's overwhelming unrebutted evidence of past torture and a current system of torture in the Philippines, that this court must step in. Well, can that be in camera or can that be a district judge act? Your Honor, we believe a protective order would be appropriate. It should be left to the discretion of the district court, possibly an in-camera review, if the government insists that the diplomatic assurances cannot be even disclosed to the petitioner. So you'd be satisfied with an in-camera review by the district judge? Not in its entirety, Your Honor. I know, but you're not going to get everything you want. I understand, Your Honor. We believe that a petitioner should at least be able to see the evidence that's offered in rebuttal to the allegations. Whether diplomatic assurances is a unique category that can only be reviewed in camera, that would be left up to the individual district judge if, in fact, diplomatic assurances were obtained in that particular case. But you do believe that what we'd be doing is reviewing the Secretary's decision? This is like APA review. I realize it's not under the APA, but this is, we'd be looking at the Secretary's decision the way we review immigration judge decisions. Yes, Your Honor. And in both contexts, the court applies due deference. Isn't this unheard of? I've been here many years. I've never reviewed the Secretary of State's decision. I've reviewed all sorts of decisions of all sorts of cabinet secretaries or their delegates, but I've never reviewed a decision by the Secretary of State. It just seems like a very strange, unusual animal. Well, isn't this more than kind of a general foreign policy decision, where there's evidence that there's a probability of, a fair probability of torture? You're not really getting into overall policy. It involves one person and that person's fate, and you just want to be comfortable with that decision, that it wasn't arbitrarily or capriciously made. Right. I've never done that. I've never seen it done as to the Secretary. Do you have a case involving the Secretary of State? Maybe you do. I just don't remember. Your Honor, if I could answer the question briefly. I see I'm out of time. You bet. I'll let you sit down until you do. Thank you. Your Honor, this issue has not been addressed. No court has reviewed the Secretary of State's determination, because the first time... I don't mean this case. I mean any kind of second-guessing of the Secretary of State's decision, any kind of context by court. I just don't remember. Maybe there are cases out there. Yes, Your Honor. As set forth in the ACLU's brief, as well as in our brief, in Plaster v. United States, a Fourth Circuit decision, the Fourth Circuit concluded there was habeas jurisdiction to evaluate the constitutionality of the person's extradition where it would violate an agreement of prosecutorial immunity. And there were additional cases, I believe one from the Eleventh Circuit. And so there is precedent for courts examining the Secretary's act of surrendering someone where it violates a statutory or constitutional right. Also in Rice v. Ames, there the Supreme Court addressed the constitutional challenge to the Secretary's extradition. Okay, thank you. Thank you, Your Honor. Mr. Luther, we took up a lot of your time with questions. We'll give you a couple of minutes for a bottle if you choose to take it. Thank you, Your Honor. I'll be very brief. I'm not sure you're succeeding there. Your argument in your brief is very heavy on the Procedures of the U.S. State Act that we took up. How much do you value the correctional matter of Procedures of the State Act? It would not matter from a straight legal perspective, no. Because, for instance, all of this Court's decisions and the Sister Court's decisions and the Supreme Court's decision in Moonaw, none of them talked about the procedures in the State Department. However, recognizing reality, we have made clear that, in particular, the current Secretary of State has in place an extremely robust mechanism for reviewing Torture Act claims. And, by the way, under State Department regulations, when there's a Torture Convention claim, in an extradition context, the decision can only be made by either the Secretary of State herself or the Deputy Secretary. Well, Your Honor, yes and no. As I say, yes, it's a straight legal matter. However, picking up on Judge Pragerson's question, which is obviously one that judges struggle with when the government makes no review arguments, what I'm trying to do is make you much more comfortable with a determination of Well, but I know that Secretary of State is going to be in like three or four years. Well, we have in place an extremely robust mechanism. We examined very... Does it matter who it is and who made the decision here? Was it the Secretary of State or her deputy? It was the Secretary of State herself in this decision. In terms of, assuming that we have habeas review, isn't, perhaps from your perspective, the appropriate inquiry whether or not the Secretary of State undertook the inquiry? For example, Secretary of State, in your view, could not say, you know, I'm not going to make that determination. And the courts could say, through habeas review, no, you have to make a determination. And the submission of an affidavit indicating the procedures in the case, not necessarily disclosing anything from your perspective, wouldn't that be acceptable? Your Honor, if I'm hearing correctly, you are getting back to Chief Judge Kuczynski's question. Yes. If the court felt that it was necessary for us to have a separate piece of paper that shows that the Secretary of State did what she's required to, meaning she says, if she certifies, I have looked at the record and I have determined that torture is not likely. Indeed. Your Honor, yes, we would not... Or an affidavit under penalty of perjury from somebody in the State Department about the procedures. I mean, what I'm saying is there are different scopes. We put all of this together. We're saying there's some form of residual habeas under 2241. And we're looking at then the scope of habeas review. One possibility is to say, well, you could go the full review that the plain swan in this case, or you say, well, no, our job is to see whether or not the Secretary of State undertook the inquiry. Yes. Period. Your Honor, and I want to... I want to emphasize this. This is something that we discussed internally at a very high level. And, yes, I am authorized to say that if the court believes that that very limited inquiry is necessary, we would, going forward, make sure that we think this record does disclose that the Secretary followed the law and did what she was supposed to do. But going... Well, the affidavit just describes general procedures. It doesn't say it happened in this case. Your Honor, as we explain our brief, I'm not disagreeing with you. But, yes, Your Honor, if going forward this court believes it's essential to have that limited statement, yes, we will provide that. But I take it the government opposes, then, a proposal that would allow in-camera inspection of the administrative records such as it is. Absolutely, Your Honor, for two reasons. One is...  Yes. And the last... Just going back to pistachio, just... You're relying on the Johnson affidavit here. Yes. There's nothing else. I'm not saying that's not enough. I just want to make sure that when I take a look at what the government, the United States, is relying on here, it's the Johnson affidavit. Yes, Your Honor. I want to make sure I understand what you just said. Yes. I think I heard you say that you are prepared, authorized at a high level, to say to us that we do have habeas jurisdiction, so long as the exercise of that jurisdiction is limited to looking at an affidavit from the secretary that says, I have considered all the matters I am required to consider, and I have concluded that this person is not likely to be tortured. Do I understand you correctly? Yes, Your Honor. If this court believes that what is justiciable is that one thing, then yes, we would be willing, going forward... And you concede habeas lies to consider that question. Is that correct? No, Your Honor. Our position is it is not necessary, but as a fallback, I'm saying, and I'm heavily relying on the Supreme Court's decision to moon off for that, because remember, the Supreme Court did not require that at all. But as a fallback, we're saying that yes, we could do that in the future in order to... I've now gotten two different answers, and I want to make sure you understand the question. I'm sorry. I first asked, do you concede that habeas lies to consider whether the secretary has considered, and you said yes. And then I asked it again, and you said no, habeas doesn't lie. I apologize. Now, what's the answer? Your Honor, we do not... Our first position is no. There is no requirement for that review. However... You're a reasonable person, so you say if that, then yes. Much more than me. High-level officials at the Justice Department and Dean Coe at the State Department. The source of good legal advice over there at the State Department? I'm sorry. Harold Coe, the source of good legal advice over there at the State Department? Impeccable legal advice. I consult with Dean Coe all the time. I hear we don't have a... He's the dean of the law school somewhere. I hear we don't have a war in Libya. Pardon me. Mr. Lawyer, isn't that... For example... Judge Fletcher, may I? Have I responded? Yes, you have. I'm sorry. Mr. Lawyer, just as a final point, isn't that type of inquiry the type that we've had, for example, where we say we're not going to decide... We're not going to review the merits of a decision of a consulate. On the other hand, if someone refuses to make a decision, then we have to ask the power of the court to say, yeah, you've got to decide the question. Your Honor, when you said, have you decided, I'm just ignorant. I don't remember what this court has. I know that other courts have that. Okay, I'll take your word for it. That's my last question. Let me say the question again. Does that depend on there being in place a set of procedures so that when you file that, you're saying we did what we have to do? Suppose there are no procedures. Suppose you're saying we can't review that either. Well, if the next Secretary of State said I'm getting rid of them all. Well, I think, Your Honor, what you'd be suggesting is would there be a review if the Secretary of State is committing perjury? That's exactly right, Your Honor. Again, I refer you to this is precisely what the Supreme Court did in Munaf. This is the Supreme Court. Mr. Harbaugh said there must be, as Judge Kuczynski was asked about, there must be substantive due process review when there's a claim of torture. And the Supreme Court rejected the substantive due process argument, precisely rejected that argument. One of those last seven minutes, you came off it. Anyway, I think we are out of time. It was a very fine argument by both counsels. It needs to be commended. The case is submitted. We're now adjourned. Thank you.
judges: Kozinski, Pregerson, Rymer, Thomas, Graber, Wardlaw, W Fletcher, Berzon, Tallman, M Smith, Ikuta, Cjj